# Matter of Cristoval SILVA-TREVINO, Respondent

*Decided October 12, 2016*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The categorical and modified categorical approaches provide the proper framework for determining whether a conviction is for a crime involving moral turpitude.

(2) Unless the controlling case law of the governing Federal court of appeals expressly dictates otherwise, the realistic probability test, which focuses on the minimum conduct that has a realistic probability of being prosecuted under the statute of conviction, should be applied in determining whether an offense is a categorical crime involving moral turpitude.

(3) Under the "minimum reading" approach applied by the United States Court of Appeals for the Fifth Circuit, the respondent's conviction for indecency with a child under section 21.11(a)(1) of the Texas Penal Code is not for a categorical crime involving moral turpitude.

(4) An alien who has engaged in misconduct involving sexual abuse of a minor is not required to make a heightened evidentiary showing of hardship or other factors to establish that an application for relief warrants a favorable exercise of discretion.

FOR RESPONDENT: Lisa Brodyaga, Esquire, San Benito, TX

FOR THE DEPARTMENT OF HOMELAND SECURITY: Elizabeth A.S. Thaler, Associate Legal Advisor

BEFORE: Board Panel: ADKINS-BLANCH, Vice Chairman; GRANT and GREER, Board Members.

GRANT, Board Member:

This case is before us pursuant to *Matter of Silva-Trevino* ("*Silva-Trevino II*"), 26 I&N Dec. 550 (A.G. 2015), in which the Attorney General vacated *Matter of Silva-Trevino* ("*Silva-Trevino I*"), 24 I&N Dec. 687 (A.G. 2008), and remanded the record to the Board for further proceedings and the entry of a new decision. In his decision, the Attorney General directed us to develop a uniform standard for determining whether a particular criminal offense is a crime involving moral turpitude. Pursuant to his directive, we asked the parties and amici curiae to provide us with

supplemental briefs regarding the issues raised in the Attorney General's decision.[1]

We conclude that the categorical and modified categorical approaches provide the proper framework for determining when a conviction is for a crime involving moral turpitude. Applying this framework to the respondent's case, we hold that he is not inadmissible as an alien convicted of a crime involving moral turpitude. The record will be remanded for further consideration of his application for relief.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who was admitted to the United States as a lawful permanent resident in 1962. On October 6, 2004, he pled no contest to the offense of indecency with a child under section 21.11(a)(1) of the Texas Penal Code. The criminal court accepted the plea, deferred further proceedings, fined the respondent $250, placed him under community supervision for a period of 5 years, and ordered him to attend sex offender counseling sessions.

Based on this conviction, the Department of Homeland Security ("DHS") charged the respondent with removability as an alien who has been convicted of an aggravated felony for sexual abuse of a minor under sections 101(a)(43)(A) and 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(43)(A) and 1227(a)(2)(A)(iii) (2000). The respondent conceded that he was removable as charged, and he requested adjustment of status to that of a lawful permanent resident. In a decision dated February 9, 2006, the Immigration Judge found that the respondent is ineligible for adjustment of status because he has been convicted of a crime involving moral turpitude, which renders him inadmissible under section 212(a)(2)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2006).

The respondent appealed from that decision. On August 8, 2006, we found that his conviction did not render him inadmissible because section 21.11(a)(1) of the Texas Penal Code criminalized at least some conduct that does not involve moral turpitude and the record of conviction did not contain any information about the conduct underlying his offense. We remanded the record to the Immigration Judge for further proceedings.

On July 10, 2007, the Attorney General directed us to refer our decision to him pursuant to 8 C.F.R. § 1003.1(h)(1)(i) (2007). The Attorney General subsequently vacated our decision and set forth a framework for determining when a conviction is for a crime involving moral turpitude in

---

[1]   We acknowledge and appreciate the briefs submitted by the parties and amici curiae.

*Silva-Trevino I*. Specifically, he instructed Immigration Judges and the Board (1) to examine the statute of conviction under the categorical approach and determine whether there was a "realistic probability" that the statute would be applied to conduct not involving moral turpitude; (2) if the categorical approach does not resolve this question, to look to the record of conviction under the modified categorical approach; and (3) in the event the record of conviction is inconclusive, to consider any relevant evidence outside the record of conviction to resolve the moral turpitude question. *Id.* at 696–704.

Applying this framework to the facts of the respondent's case, the Attorney General first addressed whether there was a "realistic probability" that the Texas statute would be applied to conduct that does not involve moral turpitude. *Id.* at 705–08.[2] He determined that in cases involving sexual misconduct with a child, "it is proper to make a categorical finding that a defendant's conduct involves moral turpitude when that conduct results in a conviction on the charge of intentional sexual conduct with a person the defendant knew or should have known was a child." *Id.* at 706–07. Further, he stated that the "inclusion of a mistake-of-age defense" would ensure that "individuals will be convicted only if they willfully or knowingly directed sexual conduct towards someone they knew, or reasonably should have known, was a child." *Id.* at 707 (citing 18 U.S.C. § 2243(c)(1) (2006)).

After analyzing section 21.11(a)(1) of the Texas Penal Code, which contained no mistake-of-age defense on its face, the Attorney General concluded that there was a realistic probability that it would be applied to reach conduct that does not involve moral turpitude. *Id.* at 708. He cited to *Johnson v. State*, 967 S.W.2d 848, 849 (Tex. Crim. App. 1998) (en banc), where the court rejected a 19-year-old defendant's contention that he should not be convicted under section 21.11(a)(1) because the victim and her friend stated that the victim was over 17, and she appeared older than her age. The Attorney General remanded the record to the Board because "where, as here, the categorical inquiry does not resolve the moral turpitude question, an adjudicator should engage in a modified categorical inquiry, considering whether the facts of the alien's prior conviction in fact involved moral turpitude." *Matter of Silva-Trevino I*, 24 I&N Dec. at 708.

On remand, we returned the record to the Immigration Judge to apply the new analytical framework. After considering evidence extrinsic to the record of conviction, he found that the respondent knew that the victim of

---

[2] The Attorney General recognized that a crime involving moral turpitude is generally defined as a crime that encompasses a reprehensible act with some form of scienter. *Matter of Silva-Trevino I*, 24 I&N Dec. at 706 & n.5.

his crime was a minor. The Immigration Judge therefore concluded that the respondent had been convicted of a crime involving moral turpitude and was ineligible for adjustment of status. We affirmed that decision. The respondent filed a petition for review with the United States Court of Appeals for the Fifth Circuit, in whose jurisdiction this case arises.

In *Silva-Trevino v. Holder*, 742 F.3d 197, 200–01 (5th Cir. 2014), the Fifth Circuit held that the phrase "convicted of" in section 212(a)(2) of the Act precludes an adjudicator from inquiring into evidence outside the record of conviction.[3] Because the Board had looked beyond the record of conviction to conclude that the respondent's conviction was for a turpitudinous offense, the court vacated our decision and remanded the record for further proceedings.

On April 10, 2015, the Attorney General issued *Silva-Trevino II*. In view of the decisions of the five courts of appeals that rejected the procedural framework set out in *Silva-Trevino I*, as well as intervening Supreme Court decisions that "cast doubt on the continued validity of the opinion," the Attorney General vacated the prior decision in its entirety. *Matter of Silva-Trevino II*, 26 I&N Dec. at 553. He remanded the record for the Board "to develop a uniform standard for the proper construction and application of section 212(a)(2) of the Act and similar provisions in light of all relevant precedent and arguments." *Id.* According to the Attorney General, the Board may address the following issues:

> 1. How adjudicators are to determine whether a particular criminal offense is a crime involving moral turpitude under the Act;
> 2. When, and to what extent, adjudicators may use a modified categorical approach and consider a record of conviction in determining whether an alien has been "convicted of . . . a crime involving moral turpitude" in applying section 212(a)(2) of the Act and similar provisions;
> 3. Whether an alien who seeks a favorable exercise of discretion under the Act after having engaged in criminal acts constituting the sexual abuse of a minor should be required to make a heightened evidentiary showing of hardship or other factors that would warrant a favorable exercise of discretion.

*Id.* at 553–54.

---

[3]   In so holding, the court joined the Third, Fourth, Ninth, and Eleventh Circuits, which also declined to defer to the framework outlined in *Silva-Trevino I. See Olivas–Motta v. Holder*, 746 F.3d 907, 916 (9th Cir. 2013); *Prudencio v. Holder*, 669 F.3d 472, 482 (4th Cir. 2012); *Fajardo v. U.S. Att'y Gen.*, 659 F.3d 1303, 1310 (11th Cir. 2011); *Jean-Louis v. Att'y Gen. of U.S.*, 582 F.3d 462, 473–74 (3d Cir. 2009). *But see Bobadilla v. Holder*, 679 F.3d 1052, 1057 (8th Cir. 2012) (deferring to the Attorney General's framework); *Mata-Guerrero v. Holder*, 627 F.3d 256, 260 (7th Cir. 2010) (same).

The Attorney General stated that his decision to vacate *Silva-Trevino I* in its entirety did not mean that he disapproved of every aspect of that decision, and he noted that nothing in his order was "intended to affect Board determinations that an offense entails or does not entail 'reprehensible conduct and some form of scienter' and is or is not a crime involving moral turpitude for that reason." *Id.* at 553 n.3 (quoting *Silva-Trevino I*, 24 I&N Dec. at 706 n.5).[4]

## II.  UNIFORM STANDARD

We have been directed to develop a uniform standard for the proper construction and application of section 212(a)(2)(A)(i)(I) of the Act as it applies to aliens "convicted of" a crime involving moral turpitude, as well as other similar provisions.[5]  Taking into consideration Supreme Court precedent, the application of that precedent in the immigration context, and the parties' positions on appeal, we conclude that the categorical and modified categorical approaches apply.

Notably, the parties agree that the categorical approach, as developed by the Supreme Court, is the proper framework for determining whether a crime involves moral turpitude under the Act.  They additionally agree that *Descamps v. United States*, 133 S. Ct. 2276 (2013), governs the concept of divisibility and the use of the modified categorical approach.  The use of the categorical and modified categorical approaches is consistent with the decisions of the five courts of appeals that did not agree with the Attorney General's third step in *Silva-Trevino I*.[6]  This framework also has strong

---

[4]  The Attorney General's decision did not invalidate the Board's decisions addressing these matters and specified that we should determine whether to retain, modify, or clarify them in any respect.

[5]  We need not now address the portion of section 212(a)(2)(A)(i)(I) of the Act that refers to an alien "who *admits* having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude." (Emphasis added.)  This provision is distinct from the portion premised on a conviction.

[6]  The DHS disagrees with the determination of the five circuits that the categorical approach applies based on the phrase "convicted of" in section 212(a)(2)(A)(i)(I) of the Act, but it concedes that the use of that approach is necessary to ensure a nationally uniform standard.  The amici addressing this specific issue generally agree that a categorical approach is appropriate.  One, however, argues that while the categorical approach should apply to most crimes involving moral turpitude, crimes involving the sexual abuse of a minor warrant a circumstantial approach.  *See generally Nijhawan v. Holder*, 557 U.S. 29 (2009) (considering evidence outside the record of conviction for certain aggravated felonies).  We decline to take this approach because we find no basis in the Act or precedent to parse the categorical approach as proposed, and we strive, to the extent possible, to provide a uniform approach for evaluating turpitudinous offenses.

historical support because its use, in various iterations, has an extensive history in the immigration context. *See Silva-Trevino*, 742 F.3d at 201 (pointing out that the categorical approach has been used in the immigration context for at least a century); *see also Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 (2015); *Matter of Short*, 20 I&N Dec. 136, 137–38 (BIA 1989) (stating that the Board only looks to the record of conviction to determine the offense of which the respondent was convicted where the statute of conviction includes some offenses that involve moral turpitude and others that do not (citing, inter alia, *Matter of S-*, 2 I&N Dec. 353 (BIA, A.G. 1945))). To provide a uniform national framework for deciding whether a crime involves moral turpitude—to the extent that is possible in light of divergent rulings in the Federal appellate courts—we will apply the categorical and modified categorical approaches as defined by recent Supreme Court precedent.

## A. Categorical Approach

When determining whether a conviction for a State or Federal offense is for a crime involving moral turpitude, Immigration Judges and the Board will examine the State or Federal statute defining the crime of conviction to see if it fits within the generic definition of a crime involving moral turpitude. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185–87 (2007), *Shepard v. United States*, 544 U.S. 13, 24 (2005), and *Taylor v. United States*, 495 U.S. 575, 599–600 (1990)). In evaluating the criminal statute under the categorical approach, unless circuit court law dictates otherwise, we apply the realistic probability test. This requires us to focus on the minimum conduct that has a realistic probability of being prosecuted under the statute of conviction, rather than on the facts underlying the respondent's particular violation of that statute. *Moncrieffe*, 133 S. Ct. at 1684–85; *Duenas-Alvarez*, 549 U.S. at 193 (explaining that to show a realistic probability, an offender "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues").

*Moncrieffe* addressed whether an offense constitutes an aggravated felony. The Federal courts of appeals differ on whether to extend the realistic probability test to the context of crimes involving moral turpitude. Four circuits have explicitly adopted the realistic probability standard in deciding whether a crime categorically involves moral turpitude. *See Cano-Oyarzabal v. Holder*, 774 F.3d 914, 917 (7th Cir. 2014); *Leal*

*v. Holder*, 771 F.3d 1140, 1145 (9th Cir. 2014);[7] *Villatoro v. Holder*, 760 F.3d 872, 877–79 (8th Cir. 2014); *Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1267 (10th Cir. 2011). Other circuits have adopted the categorical approach based on Supreme Court precedent, without expressly addressing the realistic probability test. *See, e.g.*, *Walker v. U.S. Att'y Gen.*, 783 F.3d 1226, 1229 (11th Cir. 2015); *Efstathiadis v. Holder*, 752 F.3d 591, 595 (2d Cir. 2014); *Yeremin v. Holder*, 738 F.3d 708, 715 (6th Cir. 2013); *Prudencio v. Holder*, 669 F.3d 472, 484 (4th Cir. 2012). The First Circuit has explicitly reserved its determination whether the realistic probability test should apply and looks "to the inherent nature of the crime of conviction, as defined in the criminal statute." *Da Silva Neto v. Holder*, 680 F.3d 25, 29 & n.7 (1st Cir. 2012) (quoting *Idy v. Holder*, 674 F.3d 111, 118 (1st Cir. 2012)).

Two circuits, however, have rejected the realistic probability test in the context of crimes involving moral turpitude. The Third Circuit held that it will consider the elements of the statutory offense to ascertain the least culpable conduct hypothetically necessary to sustain a conviction under the statute. *See Jean-Louis v. Att'y Gen. of U.S.*, 582 F.3d 462, 481–82 (3d Cir. 2009) (declining to import the *Duenas-Alvarez* realistic probability test into the crime involving moral turpitude context); *see also Mahn v. Att'y Gen. of U.S.*, 767 F.3d 170, 174 (3d Cir. 2014) (applying *Jean-Louis* in evaluating whether an offense is turpitudinous).

Additionally, the Fifth Circuit rejected the use of the realistic probability test in determining whether an offense is a crime involving moral turpitude and held that it will continue to apply the "minimum reading" approach. *See Gomez-Perez v. Lynch*, 829 F.3d 323, 327 (5th Cir. 2016); *Mercado v. Lynch*, 823 F.3d 276, 278 (5th Cir. 2016). Under that approach, an offense is a crime involving moral turpitude if "the minimum reading of the statute [of conviction] necessarily reaches *only* offenses involving moral turpitude." *Gomez-Perez*, 829 F.3d at 327 (quoting *Amouzadeh v. Winfrey*, 467 F.3d 451, 455 (5th Cir. 2006)).

In light of this disparity, and in the interest of setting forth a uniform national standard, we will apply the Supreme Court's realistic probability test in deciding whether an offense categorically qualifies as a crime involving moral turpitude, unless controlling circuit law expressly dictates otherwise. In evaluating what is a "realistic probability" in a given case, it is appropriate to consider how the controlling Federal circuit applies that

---

[7]   More recently, the Ninth Circuit has clarified that "when a 'state statute's greater breadth is evident from its text,' a petitioner need not point to an actual case applying the statute of conviction in a nongeneric manner." *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1010 (9th Cir. 2015) (quoting *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007)).

test. *See Matter of Chairez*, 26 I&N Dec. 819, 820 (BIA 2016) (reaffirming that the application of the categorical approach is not a matter upon which we receive deference).

### B. Modified Categorical Approach

In cases where the statute of conviction includes some crimes that involve moral turpitude and some that do not, adjudicators must determine if the statute is divisible and thus susceptible to a modified categorical analysis. Under such an analysis, resort to the record of conviction is permitted to identify the statutory provision that the respondent was convicted of violating. *See Descamps*, 133 S. Ct. at 2281, 2283 (defining when a statute may be considered "divisible"); *Matter of Chairez*, 26 I&N Dec. at 819–20 (clarifying that the understanding of statutory "divisibility" embodied in *Descamps* applies in immigration proceedings nationwide to the same extent that it applies in criminal sentencing proceedings). A criminal statute is divisible so as to warrant a modified categorical inquiry only if (1) it lists multiple discrete offenses as enumerated alternatives or defines a single offense by reference to disjunctive sets of "elements," more than one combination of which could support a conviction and (2) at least one, but not all, of those listed offenses or combinations of disjunctive elements is a categorical match to the relevant generic standard. *Matter of Chairez*, 26 I&N Dec. at 822 (citing *Descamps*, 133 S. Ct. at 2281, 2283).[8]

In this case, the parties do not dispute that the respondent's statute of conviction is indivisible, so we have no further need to address the issue. We next apply this framework to the respondent's conviction under section 21.11(a)(1) of the Texas Penal Code.

## III. ANALYSIS

### A. Indecency with a Child Under Section 21.11(a)(1)

The term "moral turpitude" generally refers to conduct that is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general."

---

[8] Recently, the Supreme Court resolved a circuit court split regarding the interpretation of divisibility under *Descamps*. *Mathis v. United States*, 136 S. Ct. 2243 (2016). In that case, the Court clarified that the modified categorical approach only applies to divisible statutes—that is, "statutes having multiple alternative elements," and it does not apply to statutes that "enumerate[] various factual means of committing a single element." *Id.* at 2249.

*Cisneros-Guerrero v. Holder*, 774 F.3d 1056, 1058 (5th Cir. 2014) (quoting *Matter of Sejas*, 24 I&N Dec, 236, 237 (BIA 2007)).  To involve moral turpitude, a crime requires two essential elements:  reprehensible conduct and a culpable mental state.  *Nino v. Holder*, 690 F.3d 691, 695 (5th Cir. 2012).  In *Matter of Silva-Trevino I*, 24 I&N Dec. at 706–07, the Attorney General held that a crime involving intentional sexual conduct by an adult with a child involves moral turpitude as long as the perpetrator knew or should have known that the victim was a minor.  We find no reason to deviate from this holding.[9]  Because this case arises in the Fifth Circuit, we will apply its minimum reading approach to the categorical inquiry.  *See Gomez-Perez*, 829 F.3d at 327.

In 2004 when the respondent was convicted of indecency with a child, section 21.11(a)(1) of the Texas Penal Code provided, in relevant part, as follows:

> A person commits an offense if, with a child younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex, the person:
>     (1) engages in sexual contact with the child or causes the child to engage in sexual contact . . . .

Under section 21.11(c), the term "sexual contact" included

> the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

---

[9]  We note, however, that our decision does not reach crimes commonly known as "statutory rape."  *See, e.g.*, Tex. Penal Code Ann. § 22.011(a)(2)(A) (West 2016).  These are a distinct category of crimes that require the penetration of the child or similar conduct.  Even though these offenses do not require a perpetrator to have knowledge of the age of the victim, we reserve the question whether they are crimes involving moral turpitude.  *See, e.g.*, *Castle v. INS*, 541 F.2d 1064, 1066 (4th Cir. 1976) (holding that "a man's carnal knowledge of a fifteen year old girl . . . is so basically offensive to American ethics and accepted moral standards as to constitute moral turpitude per se"); *Marciano v. INS*, 450 F.2d 1022, 1025 (8th Cir. 1971) ("Federal courts have consistently held that statutory rape is a crime involving moral turpitude."); *Matter of Guevara Alfaro*, 25 I&N Dec. 417, 420–21 (BIA 2011) (finding that under *Silva-Trevino I*, statutory rape of a minor under 16 years of age in violation of section 261.5(d) of the California Penal Code is a crime involving moral turpitude and declining to follow *Quintero-Salazar v. Keisler*, 506 F.3d 688, 692–94 (9th Cir. 2007)); *Matter of Dingena*, 11 I&N Dec. 723, 724–29 (BIA 1966) (holding that sexual intercourse with a female child under 16 years of age in violation of section 944.10(2) of the Wisconsin Statutes is a crime involving moral turpitude); *cf. Mehboob v. Att'y Gen. of U.S.*, 549 F.3d 272, 278–79 (3d Cir. 2008) (affirming that moral turpitude inheres in the Pennsylvania offense of misdemeanor indecent assault, which involves sexual contact with a person under 16 years of age by a perpetrator who is at least 4 years older than the complainant).

> (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or
> (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

An affirmative defense existed under section 21.11(b) if, inter alia, the actor "was not more than three years older than the victim and of the opposite sex" and "did not use duress, force, or a threat against the victim at the time of the offense."

On appeal, the respondent emphasizes that in *Silva-Trevino I*, the Attorney General found that the offense in section 21.11(a)(1) of the Texas Penal Code is not categorically a crime involving moral turpitude. He further contends that because the statute is not divisible, the record should be remanded for him to present his application for relief. The DHS argues that the respondent has been convicted of an offense that is categorically a crime involving moral turpitude because there is no realistic probability that the State would prosecute an individual under the statute for conduct that does not involve moral turpitude.

Applying the Fifth Circuit's minimum reading approach to the categorical inquiry, we conclude that the respondent's crime under section 21.11(a)(1) is not categorically a crime involving moral turpitude. As noted, an offense will be classified as a crime involving moral turpitude in the Fifth Circuit if the minimum reading of a statute only encompasses offenses involving moral turpitude. *Gomez-Perez*, 829 F.3d at 327. Because section 21.11(a)(1) is broad enough to punish behavior that is not accompanied by the defendant's knowledge that the victim was a minor, the offense does not necessarily involve moral turpitude.[10]

The DHS argues that there is no proof that the reasoning in *Johnson*, 967 S.W.2d 848, would be applied to conduct less serious than sexual intercourse. However, sexual intercourse is not an element of the crime, and the fact that the respondent admits he was convicted of conduct involving a "touching" indicates that it is not "legal imagination" to find

---

[10] In *Matter of Silva-Trevino I*, 24 I&N Dec. at 705–08, the Attorney General determined that under the realistic probability test, the respondent's crime under section 21.11(a)(1) does not categorically qualify as a crime involving moral turpitude. As stated above, the Attorney General found that a crime involving intentional sexual conduct by an adult with a child involves moral turpitude as long as the perpetrator knew or should have known that the victim was a minor. *Id*. at 706–07. Texas case law establishes that in cases involving indecency with a child, the State is not required to show that the defendant knew that the victim was younger than 17 years of age. *See Johnson*, 967 S.W.2d at 849–50 (citing, inter alia, *Roof v. State*, 665 S.W.2d 490, 492 (Tex. Crim. App. 1984) (en banc)).

that the statute is applied to conduct less invasive than penetration and similar acts. *See, e.g.*, *Sullivan v. State*, 986 S.W.2d 708, 715 (Tex. Crim. App. 1999) (upholding a conviction under section 21.11(a)(1) of the Texas Penal Code for touching the breast of a young boy); *Cruz v. State*, 742 S.W.2d 545, 548 (Tex. Crim. App. 1988) (affirming a conviction under section 21.11(a)(1) involving fondling). The respondent's crime is therefore not a categorical crime involving moral turpitude.

Because section 21.11(a)(1) is not divisible, the respondent is not inadmissible as an alien convicted of a crime involving moral turpitude. The record will therefore be remanded for further consideration of his application for adjustment of status.

### B. Heightened Discretionary Standard

The Attorney General has also asked us to consider whether an applicant for relief who has engaged in misconduct involving sexual abuse of a minor should be required to make a heightened evidentiary showing of hardship or other factors to establish that a favorable exercise of discretion is warranted. *Matter of Silva-Trevino II*, 26 I&N Dec. at 554.

In *Matter of Jean*, 23 I&N Dec. 373, 383 (A.G. 2002), the Attorney General held that aliens convicted of violent or dangerous crimes will not be granted discretionary relief except in extraordinary circumstances, such as those involving national or foreign policy decisions, or in cases where an alien clearly demonstrates that the denial of relief would result in exceptional and extremely unusual hardship. The Attorney General further noted that even a showing of such hardship may be inadequate to justify a grant of relief, depending on the nature of the crime. *Id.* at 383–84. This test has been codified for applicants for a waiver of inadmissibility under section 212(h)(2) of the Act. *See* 8 C.F.R. § 1212.7(d) (2016).

The DHS argues that a heightened evidentiary standard should be imposed on aliens who engaged in criminal acts constituting sexual abuse of a minor. Under this heightened standard, aliens would be required to establish that they would suffer exceptional and unusual hardship in the event they are removed or to present other extraordinary factors. After careful consideration, we conclude that it is not necessary to devise such an additional framework.[11]

There is a well-established framework for evaluating discretionary determinations, under which Immigration Judges balance the positive and negative factors in the record and the applicant bears the ultimate burden of

---

[11] Because we reach this conclusion, we need not specifically address the arguments of the respondent and amici that a heightened discretionary standard should not be applied.

showing that he or she merits a favorable exercise of discretion. *See Matter of C-V-T-*, 22 I&N Dec. 7, 11–12 (BIA 1998); *Matter of Marin*, 16 I&N Dec. 581, 584–85 (BIA 1978); 8 C.F.R. § 1240.8(d) (2016). In cases where "negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities." *Matter of C-V-T-*, 22 I&N Dec. at 11–12; *see also Matter of Sotelo*, 23 I&N Dec. 201, 203 (BIA 2001); *Matter of Arai*, 13 I&N Dec. 494, 496 (BIA 1970). Furthermore, when an alien has a criminal record, any rehabilitation or lack of rehabilitation may be deemed a relevant factor in the analysis, depending on the evidence presented. *See Matter of C-V-T-*, 22 I&N Dec. at 12.

In cases involving criminal acts, the Immigration Judge is not limited by any type of categorical assessment and may examine the actual nature of the crime by considering evidence outside of the record of conviction. *See, e.g.*, *Matter of Teixeira*, 21 I&N Dec. 316, 321 (BIA 1996) (discussing the admission of police reports in the context of discretionary determinations); *Matter of Thomas*, 21 I&N Dec. 20, 23 (BIA 1995) (holding that evidence of unfavorable conduct may be considered in discretionary determinations, even if it does not result in a conviction). As the finder of fact, the Immigration Judge therefore has broad latitude in assessing the exact nature of the criminal acts involved, depending on the evidence submitted by the parties.

As with any crime, in cases of sexual abuse or other mistreatment the Immigration Judge can consider the age of the victim and any other factors relevant to determining the full scope of the conduct and harm involved. The Immigration Judge can then accord the factors appropriate weight and determine whether the equities are sufficient to offset the adverse factors, although there may be cases in which an alien's criminal acts are so severe that they cannot be outweighed by compelling positive factors. *See Matter of Burbano*, 20 I&N Dec. 872, 878 (BIA 1994) (recognizing that certain criminal acts may be determinative in deciding whether a favorable exercise of discretion is warranted). We are confident that this framework is appropriate because it accounts for the particular evidence in each case. The record will therefore be remanded for the Immigration Judge to assess the respondent's application for relief based on updated evidence.

## IV. CONCLUSION

In the interest of establishing a uniform national standard despite divergent views in Federal circuit law, we conclude that the categorical and modified categorical approaches provide the appropriate framework for evaluating whether an alien has been "convicted of" a crime involving

moral turpitude. Therefore, to the extent that any Board precedent currently indicates that a contrary test should apply, we withdraw from it. *E.g.*, *Matter of Ahortalejo-Guzman*, 25 I&N Dec. 465 (BIA 2011); *Matter of Guevara Alfaro*, 25 I&N Dec. 417 (BIA 2011). The respondent has not been convicted of an offense that is categorically a crime involving moral turpitude, and there is no basis to apply the modified categorical approach. He is therefore not inadmissible under section 212(a)(2)(A)(i)(I) of the Act as an alien convicted of a crime involving moral turpitude, and he is not barred from seeking adjustment of status on that basis. Accordingly, the record will be remanded for further consideration of the respondent's eligibility for relief.[12]

**ORDER:** The record is remanded for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[12] In his supplemental filings, the respondent asserts that he should be provided with access to documents he believes were considered by the Attorney General in his initial certification process. However, the respondent has not identified any missing documents that should be in the record, nor has he established that he has been deprived of a reasonable opportunity to examine and object to evidence or to present evidence on his behalf. We therefore decline to address this request further. *See Silva-Trevino*, 742 F.3d at 199 (denying a request to supplement the record, finding that the argument was waived because no specific omission had been identified).